April, 1831.

State Bank at
Elizabeth
v.
Marsh and
Edgar.

The STATE BANK AT ELIZABETH v. JOSEPH MARSH and WILLIAM EDGAR.

Where the property of a debtor has been sold at sheriff's sale, and bought in by his friends for a nominal consideration, and upon a bill filed in this court the purchase has been decreed to be *in trust* for the benefit of creditors, and the property is ordered to be re-sold; the creditors having specific liens on the property at the time of the first sale, are to be paid first, according to their respective priorities.

The judgment creditor under whose execution the first sale was made, is not to be excluded, or limited to the sum produced by that sale. If the proceeds of the second sale will reach that judgment, in its order, the balance should be paid; or if the purchasers at the first sale have since paid off the judgment, they are entitled to be reimbursed.

It makes no difference, that the property is under the direction of this court, as equitable assets; for in regard to them, where the law gives a priority, equity will not disturb it.

Executions out of justices' courts, are liens upon the personal property only; and where the trust funds, arising from the personal property, are exhausted by prior executions, they must be placed on the same footing with the general creditors.

The widow of the debtor had united with the trustees, in the sale and conveyance of his real estate, and the master was directed to report " what sum is justly due, and ought to be allowed, for her right thus conveyed." He reported, that she ought to be paid a gross sum of seven hundred and ninety-six dollars and eighty cents, (calculating that sum to be the present value of an annuity, equal to the interest of one third of the purchase money, for her life.) The allowance on this principle, though novel, appearing to be be reasonable, and within the direction of the order of reference in this particular case, was confirmed.

Where trustees have managed a farm with prudence, and for the benefit of the property, and account for the whole nett proceeds; although it might, perhaps, have been rented for something more, yet they ought not to be charged for the deficiency unless it can be considered as growing out of their "default or neglect."

The general principle is well settled, that trustees are not entitled to compensation for services rendered in the performance of their trust; under the order for "just allowances," they are entitled only to *charges* and *expenses*.

But when by the interlocutory decree, the master was directed to allow to the trustees "a just compensation for their *trouble*, charges and expenses, in taking care of the property, making sales thereof, or otherwise in and about the same"—they may not only be allowed for charges and expenses, but also be compensated for their trouble in taking care of the property, making sales thereof, and executing the trust; by a commission, which is preferable to the allowance of a gross sum.

The master having divided the direction, and allowed the trustees twenty dollars per annum for their trouble in the care and management of the farm; and for making sale of the trust property, collecting and disbursing the monies, a commission of six per cent. The allowance for taking care of the property, being reasonable, was confirmed: the commission on the sale of the property, principally real estate, was reduced from six to four per cent. on the amount.

The direction to the master, "to take an account of the payments made by the trustees for and on account of the debts due and owing from the debtor, and the dates and amounts of such payments respectively," is complied with by his making a detailed statement of the payments made. But the trust property having been sold, and it being necessary to a final decree, it was referred back to the master "to take and state an account of the whole amount of the trust monies that have come to the hands of the trustees, or with which they ought to be charged, according to the interlocutory decree and the directions now given, and of the allowances to be made to them for monies retained or paid by them according to the trust."

April, 1831.

State Bank at
Elizabeth
v.
Marsh and
Edgar

THIS was a creditors' suit. There was an interlocutory decree, which states, "that it appearing to the Chancellor that the real and personal estate which belonged to James Smith, and which was purchased by the said Joseph Marsh and William Edgar, at the respective sales thereof made by Alexander Dunn, esquire, as sheriff of the county of Middlesex, and afterwards by Abraham Vanarsdalen, esquire, as sheriff of said county; and mentioned in the pleadings and proofs in this cause; was purchased by them, the said Marsh and Edgar, in the first place, *in trust* for the creditors of the said James Smith, and ultimately for the benefit of the family of the said Smith; and that the said Marsh and Edgar are to be considered as trustees accordingly. And that all and singular the real and personal estate purchased as above mentioned, after reimbursing and indemnifying the said Marsh and Edgar thereout, for the monies duly and lawfully paid in respect thereto, ought to be liable and chargeable to and with the payment of the debts which were, at the time of said sales respectively, due and owing from the said James Smith to his creditors, accordingly: subject, nevertheless, to the liens and incumbrances then lawfully existing and being on said property. And thereupon it was ordered, adjudged and decreed, that the said real and personal estate be deemed and held liable and chargeable accordingly. And it was referred to N. Saxton, one of the masters of this court, (among other things,) to as-

37

certain and compute the amount of the money paid by the said Marsh and Edgar, either before or after said sales, for and on account of said purchases by them : and of the amount of money by them laid out and expended, in the management and taking care of said property, and in repairs or other beneficial improvements on the said real estate. And to take an account of the liens and incumbrances which were on the said real and personal estate at the times of the said sheriffs' sales, respectively : to ascertain the nature thereof, the amount due thereon, their legal priority, and to whom payable. Also, to ascertain and report what part of the said real and personal estate so purchased, still remained in the hands of the said Marsh and Edgar ; and what part they had sold, or otherwise disposed of or wasted ; and to ascertain the amount with which they ought to be charged, for the part so sold, disposed of or wasted ; distinguishing where the widow of the said James Smith had united in any such sales ; and that he report what sum was justly due, and ought to be allowed her, for her right thus conveyed. And to take an account of the rents, issues and profits which the said Marsh and Edgar had received, or without their neglect or default might have received, from the said real estate. And also to take an account of the payments made by the said Marsh and Edgar, for and on account of the said debts due from the said James Smith, and of the dates and amounts of the said payments respectively. And in taking the said accounts, to allow to the said Marsh and Edgar a just compensation for their trouble, charges and expenses in taking care of said property, making sale thereof, or otherwise in and about the same," &c.

In obedience to this order, the master proceeded to make the inquiries, and take the accounts directed, and made a report upon the several matters contained in the said order of reference. Among other things, the master reported, that the widow of the said James Smith had united with the trustees in the sale and conveyance of a farm, called the Point-neck farm ; and upon the principle that, as dowress, she was entitled to the interest of one third of the purchase money during life, and that, being a healthy person under forty years of age, she might reasonably be expected to survive her husband twenty years ; the master allowed her

a gross sum of seven hundred and ninety-six dollars and eighty cents for her right thus conveyed; calculating that sum to be the present value of an annuity, equal to the interest of one third of the purchase money, for that period of time.

April, 1831.

State Bank at Elizabeth v. Marsh and Edgar.

Upon the coming in of this report, the complainants took the following *exceptions* :—

"*First.* For that the said master, in taking the said accounts, has allowed as liens upon the said estate of the said James Smith, deceased, judgments which were not liens on the said property ; viz. the judgments of the Trenton banking company, of Andrew Bell, of Aaron Drake, and —— Birdsall ; and has reported other judgments, as liens on the whole property, which were liens only on a part.

" *Second.* For that the master has allowed a mortgage of Jedediah Swan, deceased, as a lien on the estate, without sufficient evidence of the existence of the said mortgage, &c.

" *Third.* For that the master has allowed the widow of the said James Smith, deceased, seven hundred and ninety-six dollars and eighty cents, for her right in the Point-neck farm, sold to Samuel Dunn ; whereas nothing ought to have been allowed her, or if any thing, the allowance is much too great.

" *Fourth.* For that the master has not charged the defendants with the rents and profits received, or which might have been received out of the lands in which the said James Smith had a life estate.

" *Fifth.* For that the master has not charged the defendants with all the rents and profits received, or which with proper diligence might have been received, from the other real estate late of the said James Smith deceased, in their hands.

" *Sixth.* For that the master has allowed and deducted, for the widow of the said Smith, one third of the rents and profits, without charging her share with the one third of the taxes and expenses of carrying on the said farm.

" *Seventh.* For that the said master has allowed the said defendants, as trustees, large commissions on the sales made by them : whereas, the trust springing out of wrongful acts, no commissions ought to have been allowed, or if any, the commissions allowed are much too large.

"*Eighth.* For that the said master has allowed the defend-
ants, for payments on recognizance to Abigail Blanchard, which
have not been paid, or if paid ought not to have been allowed.

"*Ninth.* For that the said master, in his report, has made
statements of the items of the defendants' account, without de-
ciding, and reporting his decision upon them, and whether the
same are or are not allowed."

The exceptions were argued by

*G. Wood* and *I. H. Williamson*, for the complainants;

*G. D. Wall* and *S. L. Southard*, for the defendants.

THE CHANCELLOR. The first exception is, that the master
has designated and allowed as liens on the property at the time of
the sale, judgments which were no liens.

Four judgments are specified :—

1. The judgment in favour of the Trenton banking company.
2. The judgment in favour of Andrew Bell.
3. Drake's judgment in a justice's court; and
4. Birdsall's judgment, also in same court.

First, then, as to the judgment of the Trenton banking com-
pany. This was not a lien on the property at the time of the first
sale by sheriff Dunn. That sale was on the 18th January, 1819,
and the judgment was not rendered until the 23d February,
1819. But it was a lien on that part of the property which was
subsequently sold by sheriff Vanarsdalen, in September, 1820.
The complainants have charged in their bill, and such appears
to be the fact, that the sale by sheriff Vanarsdalen was in virtue
of an execution issued on that very judgment. I do not, there-
fore, see with what propriety it can be contended that it was no
lien. It was argued, however, by one of the counsel for the
complainants, that the property sold under that judgment and
execution brought only three hundred dollars, and that the exe-
cution can receive no more ; that for any thing further the Tren-
ton banking company must come in as general creditors. I can-
not concur in this opinion. I do not find that the Trenton bank-
ing company ever agreed that this property should be sold for a

nominal consideration, and purchased in by the defendants, for the general benefit of the creditors. The property was sold under their execution, without any such understanding. It turns out afterwards that this court, for good cause shown, is constrained to decree that the purchasers hold the property not absolutely, but as trustees for the benefit of the creditors of Smith. The property is ordered to be sold. It appears evident to me, that creditors having specific liens on the property are to be paid first, according to their respective priorities. If, then, the proceeds of the sales will reach this judgment in its order, why should not the balance be paid? What has the Trenton banking company done to forfeit its claim? Or, if Marsh and Edgar have satisfied this execution, why should they not be reimbursed, if there are sufficient funds? It makes no difference that this property is now under the direction of this court as equitable assets; for even in regard to these, where the law gives a priority, equity will not destroy it: 10 *Johns.* 522.

As to the judgment of Andrew Bell, that appears also to have been a lien on the property prior to the sale by Vanarsdalen; and it is stated in schedule 4, of the master's report, that there was an execution in the hands of the same sheriff. If so, the same principle will apply to this judgment also; and I am not satisfied that the judgment would not be a lien even without an execution.

The executions out of the justices' courts were also liens on the trust property at the time of the sale, or at least on a part of it, and the master has done right in so reporting them. It is contended, however, that they ought not to be paid out of the trust property, because they were only liens on the personalty, which was exhausted by prior incumbrances. The amount of the personalty is not to be taken from the sale list of the sheriff. This property was afterwards disposed of again by Marsh and Edgar, at an advance of nearly one thousand dollars, with which they are rightfully charged by the master. But even with this addition, the personal property would all be exhausted in the payment of prior liens. The executions of the State Bank at Elizabeth and the Newark Banking and Insurance company, were both prior to the executions out of the justices' courts, and they swallowed up the whole of the personal property. These executions

can be no lien on that part of the trust fund which is created by the real estate ; they never were a lien on the real estate, and must be placed in relation to it on the same footing with other claims. I think the master's report is right, under the order : he was to state the liens on the property at the time of the sale, in their order of priority, and he has done so ; but I do not understand the master to say, that because they were existing liens on the personalty at the time of the sheriff's sale, therefore they are to be paid at all events. He was not directed to report on that point.

2. The second exception, respecting the Swan mortgage, appeared to have been erroneously taken, and was not insisted on.

3. The third exception relates to the allowance of seven hundred and ninety-six dollars to the widow of James Smith, for her right of dower in the Point-neck farm.

The master was directed to inquire and report whether the widow of James Smith had united in any sales of real estate made by the trustees, and "what sum is justly due and ought to be allowed for her right thus conveyed." He reported that the trustees had sold certain real estate, that the widow had united in the sale, and that the sum of seven hundred and ninety-six dollars and eighty cents ought to be allowed for her right thus conveyed. I am not dissatisfied with this allowance. It appears reasonable ; and under the direction, I think the master was right in computing the allowance in the manner he did. The principle is a novel one, I admit, in our courts of justice ; but it is often adopted by executors and administrators in the settlement of estates, with the assent of creditors, and with great benefit to all persons interested ; and I think it would be beneficial to all parties in this case. Without considering this as a precedent for the future guidance of the court, and believing that the master has acted substantially in conformity with his directions, I am inclined to overrule this exception.

4. There is no foundation for the fourth exception. I understand from the master's report, that the property in which Smith had a life estate, was, together with all the other lands, purchased by Marsh and Edgar, (except the Tharp place,) rented by them to Smith at a certain rent, which is accounted for.

5. The fifth exception is, that the master has not charged the defendants with all the rents and profits received from the estate.

April, 1831.

State Bank at
Elizabeth
v.
Marsh and
Edgar.

This exception does not appear to be sustained. The master has taken great pains to attain a just conclusion on this part of the case submitted to him. He ascertained, by the oath of the defendants and the examination of their accounts, which he states to have been accurately kept, that the whole of the nett proceeds of the real estate, from the 1st of April, 1819, to the 1st of April, 1827, (eight years,) was two thousand six hundred and ninety-one dollars and ninety-eight cents, making an average of three hundred and thirty-six dollars and forty-nine cents per annum. On comparing this with the testimony of witnesses who were examined before him on the subject, he came to the conclusion that they should be charged the annual sum of three hundred and fifty dollars, as the fair rent of the premises. I see nothing in the evidence to satisfy me that this is incorrect. And if, as some of the witnesses seem to think, the property might, if rented for a money rent, have produced a larger amount, yet the mode pursued by the trustees was certainly a prudent one, and such as they judged most for the benefit of the property; and they ought not to be charged, unless the deficiency can be considered as growing out of their default or neglect. The property was kept in good repair, and increased in value.

6. The allowance of one third of the nett proceeds of the real estate for the widow's dower is correct. In making the allowance in that way, her share of the land bears its full share of the expenses, which is all the complainants can desire.

7th Exception relates to the commissions allowed by the master. On this subject much has been said about the nature of the trust, and the conduct of the trustees. I do not know that it would be profitable for me to go into a particular investigation of the matter. The property in their hands was declared to be trust property by the court, and to be held in trust for different purposes than those set up by the defendants in their answer. The principle is well settled, that trustees are not entitled to compensation for services rendered in the performance of their trust. It is a principle not of modern origin, but has been so long established as to have become an axiom in the law. The cases on

April, 1831.

State Bank at
Elizabeth
v.
Marsh and
Edgar.

the subject, from the earliest times to the present, are collected in *Manning* v. *Manning*, 1 *John. C. R.* 527. In that case the trustees set up a claim to a commission of five per cent. for their care and trouble in the management of the estate, and it was expressly disallowed : the court holding that they were entitled only to charges and expenses ; or, in the language of the court, "just allowances." If, therefore, this question rested on general principles, I should have no hesitation in saying that the exception was well taken. But in this case I am to look for the true rule in the decree already made by the court. The master was to be guided by that, and the inquiry is, whether he has pursued his instruction. By the interlocutory decree, which appears to have been settled with great care, the master was directed, in taking the account, to make and allow to Marsh and Edgar "a just compensation for their *trouble, charges* and *expenses* in taking care of the said property, making sales thereof, or otherwise in and about the same." If I understand the meaning of this direction, it is, that the defendants shall not only be allowed, in taking the account, for their charges and expenses, but also for their trouble and care in executing the trust—not merely in taking care of the property, but in making sale of it, or otherwise in and about the same. Such kind of trouble and care is usually compensated in the shape of commissions. It is in this way that executors, administrators and guardians are compensated, and it is preferable to the allowance of a gross sum. The master, it seems, has divided this direction. He has allowed the trustees for their trouble, &c. in taking care of the property, twenty dollars per annum ; and then for making sale of the real and personal property, and collecting and disbursing the money, he has allowed them a regular commission. I see no particular objection to this mode. The master might have put both together : by separating them he has given his view more clearly, and enabled the court to judge more distinctly of its correctness. To the first item there is no exception, and I do not see how there could be with any reason. Ten dollars a year to each trustee, is a very moderate compensation for the management of the property. The exception to the second item, (the commissions,) so far as regards the right of allowance under the decree, is not well taken : neverthe-

less it does appear to me that the rate of commissions allowed by the master is too high. Six per cent. is a liberal allowance for commissions on the *personal estate*, but much higher than is usually allowed to executors and administrators on the sale of *real estate*, especially where the amount is considerable; and I cannot think that these trustees stand before the court in the situation that executors ordinarily do. Considering that an allowance is made for their trouble in managing the estate, my opinion is that the commission should be reduced from six to four per cent. on the whole sum.

April, 1831.

State Bank at Elizabeth v. Marsh and Edgar

8. The eighth exception, relative to the recognizance to Abigail Blanchard, is not well taken, and must be overruled.

9th Exception is, that the master has made a statement of payments made by defendants, on account of the debts of James Smith, but does not decide and specify which payments are to be allowed.

By the decree the master was directed to take "an account of the payments made by the said Marsh and Edgar for and on account of the said debts due and owing from the said James Smith, and of the dates and amounts of such payments, respectively." The master has complied with the order, and made a detailed statement; and in this he has done right. But it is necessary that something further should be done before the court can proceed to make a final decree. There should be a statement made of the whole amount of trust monies that have come to their hands, or with which they are to be charged, according to the interlocutory decree and the directions now given; and of the allowances to be made them for monies retained or paid by them according to the trust. The trust property having been sold since the master's report, he will now have it in his power to take and state an account which will present the whole matter to the court in one view, and enable it to make a final decree. To this end, I will refer it back to him to take and state such an account—charging interest on the payments and receipts, respectively, upon the principles adopted in the concluding part of the report.

The question of costs is reserved until the coming in of this report.